Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, OR 97301
(503) 917-4409 Phone
(916) 857-6902  Facsimile

Attorneys for Plaintiffs
KIM GEIS *et al.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| KIM GEIS, An Individual, SHERRY SWIGART, An Individual, and JULIE JOHNSON, An Individual<br><br>Plaintiffs,<br><br>v.<br><br>COLUMBIA SPORTSWEAR CO., A Corporation, and DOES 1 THROUGH 50, Inclusive,<br><br>Defendants | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR RELIGIOUS DISCRIMINATION [42 U.S.C. § 2000e-2 AND ORS 659A.030(1)(a)] AND AIDING AND ABETTING RELIGIOUS DISCRIMINATION [ORS 659A.030(1)(g)]**<br><br>**JURY TRIAL REQUESTED** |

Plaintiffs KIM GEIS, SHERRY SWIGART, and JULIE JOHNSON (collectively "Plaintiffs") hereby allege as follows:

### PARTIES

1.     Plaintiffs are former employees of Defendant COLUMBIA SPORTSWEAR COMPANY ("COLUMBIA").

2.     Plaintiffs are also, and at all times herein were, practicing Christians who sought from COLUMBIA religious exemptions from COLUMBIA's requirement that its employees be vaccinated against COVID-19.  Not only did COLUMBIA deny Plaintiffs religious exemptions, COLUMBIA fired all of them

for declining to receive COVID-19 vaccines in violation of their sincerely held religious beliefs.

3.      Defendant COLUMBIA is, and at all times herein was, a corporation headquartered in Portland, Oregon, in the County of Multnomah; and (3) an employer within the definitions of both 42 U.S.C. § 2000e(b) and ORS 659A.001(4)(a).  *See* Attached **Exhibit "A"** [a true and accurate copy of COLUMBIA's proof of registration from the Oregon Secretary of State's website].  COLUMBIA is also, and at all times herein was, an employer within the definition of both 42 U.S.C. § 2000e(b) and ORS 659A.001(4)(a).

4.      The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiffs, who therefore sue said Defendants under such fictitious names.  Each Defendant designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiffs thereby, as herein alleged.  Plaintiffs will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

5.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

6.      This Court has jurisdiction over Defendant COLUMBIA pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States.

## VENUE

7.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

8.      Venue is proper in the Court's Portland Division because COLUMBIA is headquartered in the County of Multnomah, the events giving rise

to this Complaint occurred in County of Multnomah, and all agents, employees, or other persons working for, or in concert with, COLUMBIA with regard to the events giving rise to this case are located in, employed in, and/or residents of County of Multnomah.

## GENERAL ALLEGATIONS

9.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

10.     Plaintiff KIM GEIS ("GEIS") worked for COLUMBIA for 25 years, from January 1997 through February 2022.  Most recently, GEIS worked as a Footwear Product Manager.  In that capacity, GEIS oversaw the design, creation, and production of footwear, established delivery deadlines, and collaborated with various departments to market and deliver footwear to retailers.

11.     Plaintiff SHERRY SWIGART ("SWIGART") worked for COLUMBIA for nearly nine years, from June 2013 through February 2022.  Most recently, SWIGART worked as a Footwear Operations Specialist.  In that role, SWIGART managed costing and sourcing issues for COLUMBIA.

12.     Plaintiff JULIE JOHNSON ("JOHNSON") worked for COLUMBIA as a Real Estate Lease Administrator for three years, from February 2019 until February 2022.  JOHNSON's duties included managing all functions related to lease and contract administration for COLUMBIA.

13.     After the COVID-19 pandemic began in Oregon in March 2020, all three Plaintiffs began working mostly remotely.  Plaintiffs did need to come into COLUMBIA's Portland office on occasion; however, when they did, COLUMBIA required them to do the following:

       a.  Reserve a certain office or desk in the building so employees in the building would generally not be working too close together;

b. Submit to temperature checks as a condition of entry;

c. Wear masks at all times while in the building; and

d. Engage in social distancing to a distance of six feet or greater.

14.     Because they worked mostly remotely, Plaintiffs posed no danger to any of their fellow employees or to any of COLUMBIA's clients by remaining unvaccinated.  Even on the rare occasions when they did come into COLUMBIA's Portland office, the measures COLUMBIA required Plaintiffs to submit to as a condition of entering the building would have sufficed to prevent – or at least greatly limit – the spread of COVID-19 to other employees or clients.  This is especially true given that numerous peer-reviewed scientific studies showed that COVID-19 vaccines did not prevent the transmission of COVID-19.

15.     Plaintiffs were willing to continue working mostly remotely and submitting to the above-referenced measures as well as others – including taking care of their own immune systems to fight off infection – as a condition of being able to work unvaccinated and would have had COLUMBIA let them do so.

16.     Plaintiffs are, and at all times relevant herein were, practicing Christians who were unable to receive COVID-19 vaccines on religious grounds due to manufacturers' use of cells from aborted babies in the development of the vaccines.  *See* Attached **Exhibit "B"** [true and accurate copies of Plaintiffs' religious exception requests].

17.     Plaintiffs all requested religious exemptions from COLUMBIA's vaccination requirement, as both Title VII and ORS 659A.030 allow, and did so in a timely manner in line with COLUMBIA's imposed deadlines.  *See* Ex. "B."

18.     COLUMBIA denied all three Plaintiffs' religious exception requests. *See* Attached **Exhibit "C"** [true and accurate copies of COLUMBIA's letters notifying Plaintiffs that their religious exception requests had been denied].

19.    Plaintiffs' religious exemption requests were processed through COLUMBIA's headquarters in Portland.  The letters denying Plaintiffs' requests were sent from COLUMBIA's headquarters in Portland as well.

20.    Because Plaintiffs were unable to receive COVID-19 vaccines due to their sincerely held religious beliefs, COLUMBIA terminated their employment.

21.    To make matters worse, COLUMBIA did not require employees at any of its retail outlet stores – who, incidentally, interact directly with the public – or at any of its warehouses to be vaccinated against COVID-19.  COLUMBIA only required those employees who worked in its Portland headquarters – even on an extremely limited basis, as Plaintiffs did – to receive COVID-19 vaccines.

22.    On top of that, to the best of Plaintiffs' knowledge, COLUMBIA did grant medical exceptions from its COVID-19 vaccination requirement, but not religious exceptions, to employees who sought them.  In fact, an employee in COLUMBIA's human resources ("HR") department strongly hinted to JOHNSON that she seek a medical exemption rather than a religious one.  *See* Attached **Exhibit "D"** [a true and accurate copy of a screenshot of a conversation between JOHNSON and the HR employee concerning JOHNSON's exemption request].

23.    COLUMBIA predestined Plaintiffs for termination and did so not based on an individualized assessment of Plaintiffs' religious exemption requests, but as part of an effort to purge people of faith from COLUMBIA's employ.

24.    Since being fired by COLUMBIA:

    a.    GEIS – who is 65 – has actively sought other employment, but been unable to find it.  She pursued and obtained employment benefits to mitigate her damages, but those benefits have long since run out.

    b.    SWIGART had to sell her home and relocate to Massachusetts, where she has been unable to find other employment; and

    c.  JOHNSON is receiving disability benefits from the Social Security Administration.  She is looking for part-time work.

25.   Plaintiffs have suffered economic damages as follows:

    a.  GEIS has lost her annual salary of $76,000 per year as well as retirement benefits and medical insurance coverage;

    b.  SWIGART has lost her annual salary of $88,000 per year as well as retirement benefits and medical insurance coverage;

    c.  JOHNSON has lost her annual salary exceeding $75,000 – not counting annual pay raises – as well as roughly $5,000 in paid time off and her yearly bonus of nearly $10,000.  JOHNSON has also lost the matching annual contribution of approximately $8,000 that COLUMBIA paid toward her retirement as well as roughly $6,400 combined in medical, dental, and vision insurance benefits – she has had to pay more than $200 per month out of pocket to cover her medical expenses since being fired.  In addition, JOHNSON has lost an estimated $500,000 in life insurance and accidental death and dismemberment insurance benefits.

26.   JOHNSON, incidentally, lost her medical insurance benefits at a time when she was undergoing breast cancer treatments.

27.   Plaintiffs have suffered non-economic damages as follows:

    a.  GEIS: Major anxiety and depression; feelings of hopelessness, shame, and worthlessness; age-related financial stress at a time when most people are planning (if not able) to retire; related fears of becoming homeless; numbness; difficulty sleeping; anger; feelings of staying frozen despite trying hard to stay positive

    b.  SWIGART: Sustained daily stress and anxiety; feelings of being religiously persecuted

      c.  JOHNSON: Financial stress from losing employment compounded by stress from fighting breast cancer and paying for treatments

28.    As a condition of filing the herein lawsuit, Plaintiffs have obtained right-to-sue letters from Oregon's Bureau of Labor & Industries.  True and accurate copies of those letters are attached hereto as **Exhibit "E."**

29.    Attached hereto as **Exhibit "F"** are printouts from the website TimeandDate.com showing when the 90-day statute of limitations set forth in each right-to-sue letter is set to expire.  Plaintiffs included these printouts to show that they timely filed this lawsuit in compliance with the 90-day deadlines set forth in their right-to-sue letters.

## FIRST CAUSE OF ACTION:
### Violation of Title VII – Failure to Provide Religious Accommodation
### Against Defendant COLUMBIA
### [42 U.S.C. § 2000e-2]

30.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

31.    Title VII of the 1964 Civil Rights Act prohibits employers from discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

32.    For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

33.    Defendant COLUMBIA qualifies as an employer under Title VII.

34.    The term "religion," for purposes of Title VII, "includes all aspects of religious observance and practice, as well as belief …" 42 U.S.C. § 2000e(j).

35.    As practicing Christians, Plaintiffs belong to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a)(1).

36.    Plaintiffs hold, and at all times relevant herein held, a religious opposition to abortion prevented them from receiving COVID-19 vaccines due to the vaccine manufacturers' use of cells from aborted babies in the development of the vaccines.  *See* Ex. "B."

37.    Plaintiffs' sincerely held religious belief conflicted with their employment-related duty to receive a COVID-19 vaccine.

38.    Via written religious exception requests, Plaintiffs informed their employer, Defendant COLUMBIA, of the conflict between their religious beliefs concerning COVID-19 vaccines' connection to abortion and their employment-related duty to receive a COVID-19 vaccine.  *See* Ex. "B."

39.    Defendant COLUMBIA responded to Plaintiffs' requests for religious exemptions by subjecting them to an adverse employment action – namely, terminating their employment in February 2022.

40.    Defendant COLUMBIA made no attempt to accommodate Plaintiffs' sincerely held religious beliefs.  While COLUMBIA did assert to Plaintiffs that COLUMBIA would incur undue hardship by accommodating their beliefs [*see* Ex. "C"], COLUMBIA would not have incurred substantial additional costs by accommodating Plaintiffs' religious beliefs, as Title VII requires.

41.    Defendant COLUMBIA offered Plaintiffs no religious accommodations even though reasonable accommodations were available – specifically, the accommodation of letting Plaintiffs continue working mostly remotely and submitting to testing, wearing masks, and engaging in social distancing when they did have to come to COLUMBIA's headquarters.  Such measures would have let Plaintiffs continue working while serving COLUMBIA's interest in significantly limiting the likelihood that its employees would contract and spread COVID-19 to their co-workers or to COLUMBIA's clients.

42.     Defendant COLUMBIA would have incurred no undue hardship by accommodating Plaintiffs' religious beliefs, as they were already working mostly remotely and could easily have continued to do so.  Instead, Defendant COLUMBIA simply fired them.

43.     Animus toward Plaintiffs' religious beliefs is truly what motivated Defendant COLUMBIA to fire Plaintiffs, any assertion COLUMBIA might make to the contrary notwithstanding.

44.     Based on the foregoing, Defendant COLUMBIA has discriminated against Plaintiffs in violation of Title VII.

<u>SECOND CAUSE OF ACTION:</u>
**Violation of Title VII – Disparate Treatment/Religious Discrimination Against COLUMBIA
[42 U.S.C. § 2000e-2]**

45.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

46.     Title VII of the 1964 Civil Rights Act prohibits employers from discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

47.     For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

48.     Defendant COLUMBIA is an employer under Title VII.

49.     The term "religion," for purposes of Title VII, "includes all aspects of religious observance and practice, as well as belief …" 42 U.S.C. § 2000e(j).

50.     As practitioners of various religions, Plaintiffs belong to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a)(1).

51.     Plaintiffs were each qualified for their respective positions.

52.     Defendant COLUMBIA subjected Plaintiffs to the ultimate adverse employment action – specifically, firing them.

53.      Defendant COLUMBIA treated similarly situated individuals outside Plaintiffs' protected class differently: COLUMBIA did not require employees at its retail outlets or warehouses to receive COVID-19 vaccines.  Furthermore, whereas COLUMBIA granted at least some exemptions from its COVID-19 vaccination requirement to those who sought them on medical grounds, COLUMBIA consistently denied them to employees who sought them on religious grounds.

54.     Even assuming the individuals described in the above paragraph were not similarly situated, the circumstances described in the above paragraph give rise to an inference of religious discrimination.

55.     Based on the foregoing, Defendant COLUMBIA has committed religious discrimination against Plaintiffs in violation of Title VII.

### THIRD CAUSE OF ACTION:
**Violation of State Law Prohibiting Religious Discrimination
Against Defendant COLUMBIA
[ORS 659A.030(1)(a)]**

56.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

57.     Like Title VII, ORS 659A.030(1)(a) prohibits employers from discharging individuals from employment on the basis of religion.

58.     Because (1) Oregon's state law prohibiting employers from discriminating on the basis of religion is modeled after Title VII and (2) accordingly, the analysis for religious discrimination claims under both statutes is identical [*see Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1022 (D. Or. 2008)], Plaintiffs decline to restate the facts as set forth in their first and second causes of action, which are already incorporated as though fully set forth herein.

59.     Under 42 U.S.C. § 2000e-7, nothing in 42 U.S.C. § 1981a(b)(3), which caps the amount of non-pecuniary and punitive damages that can be awarded to Plaintiffs, "shall be deemed to exempt or relieve any person from liability, duty, penalty, or punishment provided by any present or future law of any State[.]"  In other words, an Oregon jury is free to exceed any applicable federal dollar limit in accordance with Oregon law.

60.     Under Oregon law, a jury may award up to $500,000 in noneconomic damages.  *See* ORS 31.710(1).  Oregon law defines "noneconomic damages" to include "subjective, nonmonetary losses, including but not limited to … mental suffering, emotional distress, … inconvenience and interference with normal and usual activities apart from gainful employment."  ORS 31.705(2)(b)

61.     As stated *supra*, Plaintiffs has endured mental suffering and emotional distress due to COLUMBIA's unlawful discrimination against her.

62.     ORS 659A.885(3) allows for punitive damages against employers such as Defendant COLUMBIA who violate ORS 659A.030(1)(a).  Oregon law places no cap on punitive damages.  *See Smith v. Ethicon, Inc.*, 2022 U.S. Dist. 98543 at *2 (D. Or. June 2, 2022).

63.     Based on the foregoing, in addition to violating Title VII, Defendant COLUMBIA has violated ORS 659A.030(1)(a).

**FOURTH CAUSE OF ACTION:**
**Aiding and Abetting Religious Discrimination**
**Against Defendant DOES 1-50**
**[ORS 659A.030(1)(g)]**

64.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

65.     ORS 659A.030(1)(g) prohibits any person from aiding and abetting an employer from engaging in employment discrimination.

66.     Identified herein as DOES 1 THROUGH 50 (the "DOES"), the employees of Defendant COLUMBIA who were tasked with reviewing and approving employees' religious exception requests acted in concert with, or gave substantial assistance to, COLUMBIA in unlawfully discriminating against Plaintiffs on account of their religion.  The DOES – whose identities have yet to be determined, and whom Plaintiffs intends to add as Defendants after learning their identities through discovery – did this knowing it was unlawful for COLUMBIA, as Plaintiffs' employer, to engage in religious discrimination against Plaintiffs.

67.     Because Defendant COLUMBIA carried out its religious discrimination against Plaintiffs with the assistance of the DOES, the Court should hold the DOES individually and personally liable for their conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants COLUMBIA and DOES 1 THROUGH 50 as follows:

### **ON ALL CAUSES OF ACTION:**

1.     For economic damages in an amount according to proof at trial;

2.     For non-economic damages in an amount according to proof at trial;

3.     For punitive damages in an amount according to proof at trial;

4.     For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

5.     For such other and further relief as the Court may deem proper.


Dated: September 12, 2023              PACIFIC JUSTICE INSTITUTE
                                       __/s/ RAY D. HACKE_____
                                       Ray D. Hacke
                                       Attorneys for Plaintiffs
                                       KIM GEIS *et al.*

# EXHIBIT "A"

**OREGON SECRETARY OF STATE**

HOME  ▶ **Corporation Division**

Business Xpress | business name search | oregon business guide
license directory | business registry/renewal | forms/fees | notary public
uniform commercial code | uniform commercial code search | documents & data services

## Business Name Search

New Search    Printer Friendly    Business Entity Data    09-11-2023 09:13

| Registry Nbr | Entity Type | Entity Status | Jurisdiction | Registry Date | Next Renewal Date | Renewal Due? |
|---|---|---|---|---|---|---|
| 065993-10 | DBC | ACT | OREGON | 02-03-1961 | 02-03-2024 | |
| Entity Name | COLUMBIA SPORTSWEAR COMPANY | | | | | |
| Foreign Name | | | | | | |

New Search    Printer Friendly    Associated Names

| Type | PPB | PRINCIPAL PLACE OF BUSINESS | | | | |
|---|---|---|---|---|---|---|
| Addr 1 | 14375 NW SCIENCE PARK DR | | | | | |
| Addr 2 | | | | | | |
| CSZ | PORTLAND | OR | 97229 | | Country | UNITED STATES OF AMERICA |

*Please click here for general information about registered agents and service of process.*

| Type | AGT | REGISTERED AGENT | | Start Date | 12-03-2018 | Resign Date | |
|---|---|---|---|---|---|---|---|
| Of Record | 1198907-96 | UNITED AGENT GROUP INC. | | | | | |
| Addr 1 | 5708 SE 136TH AVE #2 | | | | | | |
| Addr 2 | | | | | | | |
| CSZ | PORTLAND | OR | 97236 | | Country | UNITED STATES OF AMERICA | |

| Type | MAL | MAILING ADDRESS | | | | |
|---|---|---|---|---|---|---|
| Addr 1 | 14375 NW SCIENCE PARK DR | | | | | |
| Addr 2 | | | | | | |
| CSZ | PORTLAND | OR | 97229 | | Country | UNITED STATES OF AMERICA |

| Type | PRE | PRESIDENT | | | | Resign Date | |
|---|---|---|---|---|---|---|---|
| Name | TIMOTHY | P | BOYLE | | | | |
| Addr 1 | 14375 NW SCIENCE PARK DRIVE | | | | | | |
| Addr 2 | | | | | | | |
| CSZ | PORTLAND | OR | 97229 | | Country | UNITED STATES OF AMERICA | |

| Type | SEC | SECRETARY | | | | Resign Date | |
|---|---|---|---|---|---|---|---|
| Name | CHRISSY | | MECKLENBORG | | | | |
| Addr 1 | 14375 NW SCIENCE PARK DRIVE | | | | | | |

| Addr 2 | | | | | | |
|--------|--|--|--|--|--|--|
| CSZ | PORTLAND | OR | 97229 | | Country | UNITED STATES OF AMERICA |

New Search      Printer Friendly      Name History

| Business Entity Name | Name Type | Name Status | Start Date | End Date |
|----------------------|-----------|-------------|------------|----------|
| COLUMBIA SPORTSWEAR COMPANY | EN | CUR | 12-23-1969 | |
| COLUMBIA SPORTSWEAR MFG., INC. | EN | PRE | 02-03-1961 | 12-23-1969 |

Please read before ordering Copies.

New Search      Printer Friendly      Summary History

| Image Available | Action | Transaction Date | Effective Date | Status | Name/Agent Change | Dissolved By |
|-----------------|--------|------------------|----------------|--------|-------------------|--------------|
| | AMENDED ANNUAL REPORT | 12-16-2022 | | FI | | |
| | AMENDED ANNUAL REPORT | 01-25-2022 | | FI | | |
| | AMENDED ANNUAL REPORT | 01-20-2021 | | FI | | |
| | AMENDED ANNUAL REPORT | 02-03-2020 | | FI | | |
| | AMENDED ANNUAL REPORT | 02-01-2019 | | FI | | |
| | AMNDMT TO ANNUAL RPT/INFO STATEMENT | 12-03-2018 | | FI | Agent | |
| | RESTATED ARTICLES | 06-11-2018 | | FI | | |
| | AMENDED ANNUAL REPORT | 02-06-2018 | | FI | | |
| | AMNDMT TO ANNUAL RPT/INFO STATEMENT | 10-25-2017 | | FI | | |
| | AMNDMT TO ANNUAL RPT/INFO STATEMENT | 09-11-2017 | | FI | | |
| | AMENDED ANNUAL REPORT | 01-09-2017 | | FI | | |
| | AMENDED ANNUAL REPORT | 01-28-2016 | | FI | | |
| | CHANGE OF REGISTERED AGENT/ADDRESS | 03-24-2015 | | FI | | |
| | AMNDMT TO ANNUAL RPT/INFO STATEMENT | 03-09-2015 | | FI | | |
| | AMENDED ANNUAL REPORT | 01-20-2015 | | FI | | |
| | AMENDED ANNUAL REPORT | 01-10-2014 | | FI | | |
| | AMENDED ANNUAL REPORT | 01-08-2013 | | FI | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 📄 | AMENDED ANNUAL REPORT | 12-16-2011 | | FI | | |
| | ANNUAL REPORT PAYMENT | 01-07-2011 | 01-05-2011 | SYS | | |
| | ANNUAL REPORT PAYMENT | 01-11-2010 | 01-08-2010 | SYS | | |
| | ANNUAL REPORT PAYMENT | 01-26-2009 | 01-23-2009 | SYS | | |
| | ANNUAL REPORT PAYMENT | 01-15-2008 | 01-14-2008 | SYS | | |
| | ANNUAL REPORT PAYMENT | 01-22-2007 | 01-19-2007 | SYS | | |
| | AMNDMT TO ANNUAL RPT/INFO STATEMENT | 01-25-2006 | | FI | | |
| | ANNUAL REPORT PAYMENT | 01-17-2006 | 01-12-2006 | SYS | | |
| | CHANGE OF REGISTERED AGENT/ADDRESS | 04-07-2005 | | FI | Agent | |
| | ANNUAL REPORT PAYMENT | 01-20-2005 | 01-18-2005 | SYS | | |
| | ANNUAL REPORT PAYMENT | 01-26-2004 | 01-23-2004 | SYS | | |
| | ANNUAL REPORT PAYMENT | 01-06-2003 | | SYS | | |
| 📄 | ARTICLES OF AMENDMENT | 06-25-2002 | | FI | | |
| | CHANGE OF REGISTERED AGENT/ADDRESS | 02-15-2002 | | FI | | |
| | AMNDMT TO ANNUAL RPT/INFO STATEMENT | 02-07-2002 | | FI | | |
| | ANNUAL REPORT PAYMENT | 01-29-2002 | | SYS | | |
| | ANNUAL REPORT PAYMENT | 02-22-2001 | | SYS | | |
| 📄 | NB AMENDMENT | 04-19-2000 | | FI | | |
| | STRAIGHT RENEWAL | 02-08-2000 | | FI | | |
| | AGENT/AUTH REP CHNG | 05-27-1999 | | FI | | |
| | STRAIGHT RENEWAL | 01-15-1999 | | FI | | |
| 📄 | NB AMENDMENT | 03-24-1998 | | FI | | |
| | STRAIGHT RENEWAL | 01-21-1998 | | FI | | |
| | CHANGED RENEWAL | 01-21-1998 | | FI | | |
| 📄 | EXCHANGE | 12-18-1997 | | FI | | |
| | STRAIGHT RENEWAL | 02-03-1997 | | FI | | |
| 📄 | NB AMENDMENT | 12-31-1996 | | FI | | |
| | STRAIGHT RENEWAL | 01-31-1996 | | FI | | |
| | AMENDED RENEWAL | 02-08-1995 | | FI | | |
| | STRAIGHT RENEWAL | 02-09-1994 | | FI | | |

| | | | | | |
|---|---|---|---|---|---|
| | AGENT/AUTH REP CHNG | 02-02-1994 | | FI | |
| | STRAIGHT RENEWAL | 01-15-1993 | | FI | |
| | NB AMENDMENT | 12-29-1992 | | FI | |
| | STRAIGHT RENEWAL | 01-14-1992 | | FI | |
| | NB AMENDMENT | 12-11-1991 | | FI | |
| | STRAIGHT RENEWAL | 01-30-1991 | | FI | |
| | STRAIGHT RENEWAL | 12-26-1989 | | FI | |
| | AMENDED RENEWAL | 01-03-1989 | | FI | |
| | STRAIGHT RENEWAL | 12-29-1987 | | FI | |
| | STRAIGHT RENEWAL | 12-30-1986 | | FI | |
| | STRAIGHT RENEWAL | 01-21-1986 | | FI | |
| | STRAIGHT RENEWAL | 02-19-1985 | | FI | |
| | AGENT/AUTH REP CHNG | 03-07-1984 | | FI | |
| | ENTITY NAME CHANGE | 12-23-1969 | | FI | |
| | AMENDMENT | 12-16-1969 | | FI | |
| | NEW | 02-03-1961 | | FI | |

# EXHIBIT "B"

Kim Geis

Religious Exemption (Kim Geis)

Title VII of the Civil Rights Act of 1964 states in Section 703 that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his/her compensation, terms, conditions, or privileges of employment, because of such individual's …religion…." As a practicing Christian, I believe that being forced to receive the Covid-19 vaccination is against my beliefs on many levels. God has given us freewill to choose: Genesis 3:22, *"And the Lord God said, the man has now become like one of us knowing good and evil…"* Being forced into something that I am not comfortable with would mean losing a part of my identity and feeling like my service to God is being taken away. God has given me the responsibility and the ability to critically think to make decisions which are best for my own life, which means researching all available resources, making real life observations, and having conversation through prayer with God about the best possible solution for me.

In addition to my freewill, my Christian beliefs reveal other reasons as to why taking this vaccine is against my beliefs. The first reason I believe this vaccine goes against my beliefs is that the vaccine was developed using aborted fetal cell lines. As a Christian, I take full heart in the words that come from the Bible. Some of the words that most resonate with me are: Exodus 20:13, *"You shall not murder."* Psalm 139:15-16, *"My frame was not hidden from you when I was made in the secret place, when I was woven together in the depths of the earth. Your eyes saw my unformed body; all the days ordained for me were written in your book before one of them came to be."* Jeremiah 1:5, *"Before I formed you in the womb, I knew you, before you were born, I set you apart; I appointed you as a prophet to the nations."*

According to Nebraska Medicine's published article titled, *you asked, we answered: Do the COVID-19 vaccines contain aborted fetal cells?* The Covid-19 vaccine trials used aborted human fetal cells, which I find wrongful and against my beliefs as a Christian. I believe in what the Bible says, a baby is formed by God in the womb. God gives babies a purpose and meaning in life even before delivery. Therefore, an aborted baby means taking the life away; in my Christian viewpoint that means murder which is a sin that I cannot condone. Taking this vaccine that was created with aborted fetal matter demonstrates profound disrespect to those murdered babies and goes against the Word of God that I follow.

My beliefs aren't against approved vaccinations. In the past, I have received approved vaccines because they can be used as a preventative measure against contracting disease. The Covid-19 vaccine is only used to mitigate the severity of the symptoms, which makes sense for some people especially in the earlier strains. It can't prevent me or anyone from contracting the virus.

Matthew 22:39, *"Love your neighbor as yourself,"* calls us to love others as ourselves. God's calls for us to love each other, makes me determined to seek alternatives that ensure others' safety in each individual case, and ensure that such alternatives do not violate one's freedom of choice. Such safety alternatives would consist of always wearing a mask indoors,

Covid-19 testing if needed, keeping distances when possible.  As well as taking care of my innate immunity to help my body be as strong as possible to fight off infections.

Thank you for considering this religious exemption and as such respecting religious freedom.

Sincerely,
Kim Geis

Sherry Swigart

Sherry Swigart's Religious Exemption

Title VII of the Civil Rights Act of 1964 states in Section 703 that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his/her compensation, terms, conditions, or privileges of employment, because of such individual's …religion…." As a practicing Christian, I believe that being forced to receive the Covid-19 vaccination is against my beliefs on many levels. God has given us freewill to choose: Genesis 3:22, *"And the Lord God said, the man has now become like one of us knowing good and evil…"* Being forced into something that I am not comfortable with would mean losing a part of my identity and feeling like my service to God is being taken away. God has given me the responsibility and the ability to critically think to make decisions which are best for my own life, which means researching all available resources, making real life observations, and having conversation through prayer with God about the best possible solution for me.

In addition to my freewill, my Christian beliefs reveal other reasons as to why taking this vaccine is against my beliefs. The first reason I believe this vaccine goes against my beliefs is that the vaccine was developed using aborted fetal cell lines. As a Christian, I take full heart in the words that come from the Bible. Some of the words that most resonate with me are: Exodus 20:13, *"You shall not murder."* Psalm 139:15-16, *"My frame was not hidden from you when I was made in the secret place, when I was woven together in the depths of the earth. Your eyes saw my unformed body; all the days ordained for me were written in your book before one of them came to be."* Jeremiah 1:5, *"Before I formed you in the womb, I knew you, before you were born, I set you apart; I appointed you as a prophet to the nations."*

According to Nebraska Medicine's published article titled, *You asked, we answered: Do the COVID-19 vaccines contain aborted fetal cells?* The Covid-19 vaccine trials used aborted human fetal cells, which I find wrongful and against my beliefs as a Christian. I believe in what the Bible says, a baby is formed by God in the womb. God gives babies a purpose and meaning in life even before delivery. Therefore, an aborted baby means taking the life away; in my Christian viewpoint that means murder which is a sin that I cannot condone. Taking this vaccine that was created with aborted fetal matter demonstrates profound disrespect to those murdered babies and goes against the Word of God that I follow.

My beliefs aren't against approved vaccinations. In the past, I have received approved vaccines because they can be used as a preventative measure against contracting disease. The Covid-19 vaccine is only used as a way to mitigate the severity of the symptoms, which makes sense for some people especially in the earlier strains. It can't prevent me or anyone from contracting the virus.

Matthew 22:39, *"Love your neighbor as yourself,"* calls us to love others as ourselves. God's calls for us to love each other, makes me determined to seek alternatives that ensure others' safety in each individual case, and ensure that such alternatives do not violate one's freedom of choice. Such safety alternatives would consist of always wearing a mask indoors,

Covid-19 testing if needed, keeping distances when possible.  As well as taking care of my innate immunity to help my body be as strong as possible to fight off infections.

Thank you for considering this religious exemption and as such respecting religious freedom.

Sincerely,
Sherry Swigart

Julie Johnson

# Religious Accommodation Request Form: COVID-19

*CSC considers all requests for reasonable accommodation of an employee's sincerely held religious belief. The Company provides reasonable accommodation when it concludes both that the request is based on a sincerely held religious belief, and that the Company can make the accommodation without an undue hardship as defined by federal and applicable state law.  An undue hardship in the context of a request for a religious accommodation is defined under federal law as one that imposes a more than "minimal burden" on the Company; state law definitions vary.  CSC follows the applicable standard that is most protective of the employee.*

**To Be Completed By Employee**                      (Please attach additional pages if needed)

I am experiencing a conflict between my sincerely held religious belief, observance, or practice and a work rule or requirement related to COVID-19. I am requesting an accommodation to try to eliminate and/or minimize this conflict. I am providing the following information in support of my request for a religious accommodation.

| Name (print):<br>Julie Johnson | Date:<br>12/27/2021 |
|---|---|
| Dept.:<br>Real Estate | Position:<br>Real Estate Lease Administrator |
| Manager:<br>Xander Smit | Work/Cell Phone:<br>(808) 269-0662 |

Identify the COVID-19 related work rule or job requirement that you believe conflicts with your religious belief, observance, or practice:

        Mask/PPE Policy _____

        Vaccination Policy _____

Other COVID-related requirement policy (please identify the requirement): _____

_____

Identify your religious belief, observance, or practice that you believe conflicts with the Company's COVID-19 safety related work rule an explain the nature of the conflict: _____

_____


If the requirement from which you are seeking an exemption is to the COVID-19 vaccine please explain whether your religious belief or practice rejects all medical care, all vaccines, or the COVID-19 vaccine only: _____

_____

If the requirement from which you are seeking an exemption is to the COVID-19 vaccine, please state whether you also have objections to COVID-19 testing and, if so, explain the basis for your religious objection to testing: _____

_____


Explain how your religious belief, observance, or practice conflicts with the work rule or job requirement at issue and why you think so: _____

_____

_____

_____


Identify any accommodations that you believe the Company could provide to resolve the conflict you have described, including alternate accommodations.  Please be as specific as possible: _____

_____

_____


Identify the time period for which you are requesting accommodation. If you only need the accommodation occasionally, describe the time period, frequency, or circumstances as specifically as possible: _____

_____

_____


Additional comments:_____

_____

_____


If desired and applicable, you may have your religious leader provide a document in support of your request attesting to the conflict between your sincerely held religious belief and the requirement from which you are seeking exemption or other accommodation.  A failure to provide such an attestation does not necessarily mean your request will be denied.  Please initial here if you are submitting a supporting attestation: _____By signing below, I certify that the information I have provided above is true and accurate.

Print Employee Name _____

Employee Signature  *Julie Johnson* _____  Date _____

**<u>Instructions to the Supervisor:</u>**  <u>Once the employee has completed this request form, please contact the Human Resources Services Center, Employee Relations, for assistance evaluating the request.</u>

## HR USE ONLY

Date of initial request: __/__/____          Date certification received: __/__/____

Accommodation request:

☐   Approved __/__/____
      Describe specific accommodation details:

_____

_____

_____

☐   Denied    __/__/____
      Describe why accommodation is denied:

_____

_____

_____

# EXHIBIT "C"

Kim Geis



January 21,2022

Re:  Response to Request for Exemption from COVID-19 Vaccine Mandate

Dear Kim Geis,

Thank you for your request for an exemption to the COVID-19 vaccine mandate.  Your request was based on what you described as a conflict between the requirement of being vaccinated against the COVID-19 virus and your religious beliefs.

We have considered the information you have supplied and additional relevant factors and regret to have to inform you that we are unable to grant your request.

We determined that, regardless of whether the belief you described may fall within the definition of a religious belief that could otherwise necessitate reasonable accommodation, the vaccine exemption you are seeking would impose an undue burden on our ability to maintain a safe workplace for all CSC employees and customers.

This determination is based on the fact that your position entails working in proximity to other employees and visitors in an enclosed indoor space over extended periods, and on the nature and state of the current COVID-19 pandemic in your region. We also determined that mitigation measures (including regular testing) would not sufficiently diminish the safety risk and would impose significant difficulty and expense.

Columbia Sportswear respects employees' religious commitments and practices.  And we thank you for taking the time to explain the basis for your request.  Unfortunately, however, for the reasons described above, in the current challenging pandemic environment, we are unable to grant your request.

**Next Steps**

Corporate employees of Columbia Sportswear will be required to follow our Vaccine policy as of February 1, 2022. If you have not completed your vaccination series by February 1, you will be placed on unpaid leave of absence and be subject to our escalation to termination process, outlined on the next page.

Please let us know if your circumstances change. If you have any questions about these next steps, please contact AskHR@Columbia.com.

Sincerely,

Columbia Sportswear Company



<u>Vaccine Policy</u>

All U.S. Portland headquarters, brand office and showroom employees must be fully vaccinated no later than February 15, 2022.

To be fully vaccinated by February 15, 2022, an employee must:
- Obtain the first dose of a two-dose vaccine no later than January 4, 2022 (for Moderna) or January 11, 2022 (for Pfizer); and the second dose no later than February 1, 2022; or
- Obtain one dose of a single dose vaccine (Johnson & Johnson) no later than February 1, 2022.

Employees who indicate they do not intend to get a vaccine and do not have an approved religious or medical accommodation will be voluntarily terminated February 1.

Employees who intend to request a religious or medical accommodation should do so no later than December 28 to ensure enough time to go through the accommodation process and avoid being placed on unpaid leave of absence on February 1.

<u>Escalation to Termination for Unvaccinated Employees</u>

Employees who have not completed their chosen vaccine series by February 1, and intend to get vaccinated, will be placed on an <u>unpaid</u>* leave of absence, February 2, 2022. Employees with PTO will be required to use PTO while on leave, before going unpaid.

Employees on unpaid leave will have until February 15 to receive their first vaccine of their chosen vaccination. Those who have not completed their first dose of Pfizer or Moderna, or the single dose Johnson & Johnson vaccine by February 15 will be voluntarily separated effective Friday, February 18. Medical, dental, vision and voluntary benefits will end on February 28, 2022.

Employees choosing Moderna or Pfizer will remain on unpaid leave until they complete the vaccine series. They will have until March 15 to receive their second Moderna or Pfizer vaccine. Employees who have not received their second shot by March 15 will be voluntarily terminated effective Friday, March 18. Medical dental, vision and voluntary benefits will end on March 31, 2022.

*This unpaid leave is unprotected, which means the role of an employee on an unpaid leave can be filled and unavailable upon their return. In this event, the employee would be voluntarily terminated.

Sherry Swigart



January 21,2022

Re:  Response to Request for Exemption from COVID-19 Vaccine Mandate

Dear Sherry Swigart,

Thank you for your request for an exemption to the COVID-19 vaccine mandate.  Your request was based on what you described as a conflict between the requirement of being vaccinated against the COVID-19 virus and your religious beliefs.

We have considered the information you have supplied and additional relevant factors and regret to have to inform you that we are unable to grant your request.

We determined that, regardless of whether the belief you described may fall within the definition of a religious belief that could otherwise necessitate reasonable accommodation, the vaccine exemption you are seeking would impose an undue burden on our ability to maintain a safe workplace for all CSC employees and customers.

This determination is based on the fact that your position entails working in proximity to other employees and visitors in an enclosed indoor space over extended periods, and on the nature and state of the current COVID-19 pandemic in your region. We also determined that mitigation measures (including regular testing) would not sufficiently diminish the safety risk and would impose significant difficulty and expense.

Columbia Sportswear respects employees' religious commitments and practices.  And we thank you for taking the time to explain the basis for your request.  Unfortunately, however, for the reasons described above, in the current challenging pandemic environment, we are unable to grant your request.

**Next Steps**

Corporate employees of Columbia Sportswear will be required to follow our Vaccine policy as of February 1, 2022. If you have not completed your vaccination series by February 1, you will be placed on unpaid leave of absence and be subject to our escalation to termination process, outlined on the next page.

Please let us know if your circumstances change. If you have any questions about these next steps, please contact AskHR@Columbia.com.

Sincerely,

Columbia Sportswear Company



**Vaccine Policy**

All U.S. Portland headquarters, brand office and showroom employees must be fully vaccinated no later than February 15, 2022.

To be fully vaccinated by February 15, 2022, an employee must:
- Obtain the first dose of a two-dose vaccine no later than January 4, 2022 (for Moderna) or January 11, 2022 (for Pfizer); and the second dose no later than February 1, 2022; or
- Obtain one dose of a single dose vaccine (Johnson & Johnson) no later than February 1, 2022.

Employees who indicate they do not intend to get a vaccine and do not have an approved religious or medical accommodation will be voluntarily terminated February 1.

Employees who intend to request a religious or medical accommodation should do so no later than December 28 to ensure enough time to go through the accommodation process and avoid being placed on unpaid leave of absence on February 1.

**Escalation to Termination for Unvaccinated Employees**

Employees who have not completed their chosen vaccine series by February 1, and intend to get vaccinated, will be placed on an <u>unpaid</u>* leave of absence, February 2, 2022. Employees with PTO will be required to use PTO while on leave, before going unpaid.

Employees on unpaid leave will have until February 15 to receive their first vaccine of their chosen vaccination. Those who have not completed their first dose of Pfizer or Moderna, or the single dose Johnson & Johnson vaccine by February 15 will be voluntarily separated effective Friday, February 18. Medical, dental, vision and voluntary benefits will end on February 28, 2022.

Employees choosing Moderna or Pfizer will remain on unpaid leave until they complete the vaccine series. They will have until March 15 to receive their second Moderna or Pfizer vaccine. Employees who have not received their second shot by March 15 will be voluntarily terminated effective Friday, March 18. Medical dental, vision and voluntary benefits will end on March 31, 2022.

*This unpaid leave is unprotected, which means the role of an employee on an unpaid leave can be filled and unavailable upon their return. In this event, the employee would be voluntarily terminated.

Julie Johnson



January 25, 2022

Re:  Response to Request for Exemption from COVID-19 Vaccine Mandate

Dear Julie Johnson,

Thank you for your request for an exemption to the COVID-19 vaccine mandate.  Your request was based on what you described as a conflict between the requirement of being vaccinated against the COVID-19 virus and your religious beliefs.

We have considered the information you have supplied and additional relevant factors and regret to have to inform you that we are unable to grant your request.

We determined that, regardless of whether the belief you described may fall within the definition of a religious belief that could otherwise necessitate reasonable accommodation, the vaccine exemption you are seeking would impose an undue burden on our ability to maintain a safe workplace for all CSC employees and customers.

This determination is based on the fact that your position entails working in proximity to other employees and visitors in an enclosed indoor space over extended periods, and on the nature and state of the current COVID-19 pandemic in your region. We also determined that mitigation measures (including regular testing) would not sufficiently diminish the safety risk and would impose significant difficulty and expense.

Columbia Sportswear respects employees' religious commitments and practices.  And we thank you for taking the time to explain the basis for your request.  Unfortunately, however, for the reasons described above, in the current challenging pandemic environment, we are unable to grant your request.

Next Steps

Corporate employees of Columbia Sportswear will be required to follow our Vaccine policy as of February 1, 2022. If you have not completed your vaccination series by February 1, you will be placed on unpaid leave of absence and be subject to our escalation to termination process, outlined on the next page.

Please let us know if your circumstances change. If you have any questions about these next steps, please contact AskHR@Columbia.com.

Sincerely,

Columbia Sportswear Company



## Vaccine Policy

All U.S. Portland headquarters, brand office and showroom employees must be fully vaccinated no later than February 15, 2022.

To be fully vaccinated by February 15, 2022, an employee must:
- Obtain the first dose of a two-dose vaccine no later than January 4, 2022 (for Moderna) or January 11, 2022 (for Pfizer); and the second dose no later than February 1, 2022; or
- Obtain one dose of a single dose vaccine (Johnson & Johnson) no later than February 1, 2022.

Employees who indicate they do not intend to get a vaccine and do not have an approved religious or medical accommodation will be voluntarily terminated February 1.

Employees who intend to request a religious or medical accommodation should do so no later than December 28 to ensure enough time to go through the accommodation process and avoid being placed on unpaid leave of absence on February 1.

## Escalation to Termination for Unvaccinated Employees

Employees who have not completed their chosen vaccine series by February 1, and intend to get vaccinated, will be placed on an unpaid* leave of absence, February 2, 2022. Employees with PTO will be required to use PTO while on leave, before going unpaid.

Employees on unpaid leave will have until February 15 to receive their first vaccine of their chosen vaccination. Those who have not completed their first dose of Pfizer or Moderna, or the single dose Johnson & Johnson vaccine by February 15 will be voluntarily separated effective Friday, February 18. Medical, dental, vision and voluntary benefits will end on February 28, 2022.

Employees choosing Moderna or Pfizer will remain on unpaid leave until they complete the vaccine series. They will have until March 15 to receive their second Moderna or Pfizer vaccine. Employees who have not received their second shot by March 15 will be voluntarily terminated effective Friday, March 18. Medical dental, vision and voluntary benefits will end on March 31, 2022.

*This unpaid leave is unprotected, which means the role of an employee on an unpaid leave can be filled and unavailable upon their return. In this event, the employee would be voluntarily terminated.

# EXHIBIT "D"

 **You**                                          11:37 AM
To Xander Smit                                      ...

Xander,

As you are probably aware, I submitted an Accommodation Request.

Here I am fighting for my life, and now I feel like I'm fighting for my job.  It's not a good feeling!  Per the chat, it seems what I have submitted is not sufficient.



Thanks,
Julie

~Thank you~

# EXHIBIT "E"

Kim Geis



August 17, 2023

KIM GEIS
C/O PACIFIC JUSTICE INSTITUTE
PO BOX 5229
SALEM, OR 97304

RE:     Complainant:   Kim Geis
         Respondent:    Columbia Sportswear Company
         Case #:          EEEMRG220822-11922
         EEOC #:        38D-2023-00318

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. ***Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation.</u>***

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing**: August 17, 2023

Enclosure(s)
cc:     Ray D Hacke, Complainant's Attorney

   

Sherry Swigart



**CHRISTINA E. STEPHENSON**
Labor Commissioner

August 30, 2023

SHERRY L SWIGART
C/O PACIFIC JUSTICE INSTITUTE
PO BOX 5229
SALEM, OR 97304

RE:   Complainant:   Sherry L Swigart
      Respondent:    Columbia Sportswear Company
      Case #:        EEEMRG220913-11380
      EEOC #:        38D-2023-00002

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been closed because the Complainant has withdrawn and informed us of intention to go to court.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter.  Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice.  Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice.  *Note:  If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation</u>.*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300).  Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing.  The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If your case involves an Occupational Safety and Health Administration (OSHA) retaliation complaint, Complainants who choose to withdraw their case to federal or state court will forfeit their rights to appeal this Oregon Bureau of Labor and Industries determination with OSHA.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844.  There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing: August 30, 2023**

Enclosure(s)
cc:   Ray D Hacke, Complainant's Attorney

   

## Civil Rights Division – Bureau of Labor & Industries
## Complaint Dismissal Memo

Complainant:      Sherry L Swigart
Respondent:       Columbia Sportswear Company
Case Number:      EEEMRG220913-11380
Date:             August 29, 2023
Complainant:      Sherry L Swigart
Respondent:       Columbia Sportswear Company
Case Number:      EEEMRG220913-11380
Date:             August 29, 2023
Investigator:     Michael Mohr

Complainant alleges religious discrimination in that her request for exemption from Covid-19 vaccination was denied. Respondent provided a Statement of Position stating that Complainant's job could not be performed by an unvaccinated individual. Prior to determination, Complainant counsel requested the matter be withdrawn so that the matter could be pursued with a court filing. The matter is so withdrawn, with Notice of Right to Sue issuance.

Julie Johnson



CHRISTINA E. STEPHENSON
Labor Commissioner

June 16, 2023

JULIE JOHNSON
11691 SW TEAL BLVD #E
BEAVERTON, OR 97007

RE:    Complainant:   Julie Johnson
       Respondent:    Columbia Sportswear Company
       Case #:        EEEMRG220714-11008
       EEOC #:        38D-2022-00652

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. ***Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation.</u>***

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing**: June 16, 2023

Enclosure(s)

 

## Civil Rights Division – Bureau of Labor & Industries
## Complaint Dismissal Memo

Complainant:      Julie Johnson
Respondent:       Columbia Sportswear Company
Case Number:      EEEMRG220714-11008
Date:             June 15, 2023
Investigator:     Michael Mohr

Reviewed By:      _____ Theodore E. Wenk

Complainant alleges discrimination based on religion in that Respondent determined that her position could not be made fully remote and it would be more than a de minimis accommodation to allow her to work on site without a vaccination.

Respondent provided a Position Statement providing that Complainant began working for Respondent in April 2020 as a Global Real Estate Administrator.  In December 2021, Respondent created a policy that required staff to be vaccinated from COVID-19. Complainant submitted a religious accommodation request on December 27, 2021, requesting that she work remotely or be allowed to work on-site with a vaccination. Respondent determined that working on site without vaccination would create a direct threat to staff by increasing the risk of transmitting COVID-19 in the office.  Respondent indicated that some job duties, such as signing particular lease documentation and providing administrative support to the Director of Global Real Estate, Xander Smit. Respondent determined that, in line with Complainant's position description, approximately 30 percent of her job required her to be in the office in person, particularly to provide Mr. Smit with administrative support.  Respondent's analysis was solely based on the undue burden (more than a de minimis burden) that would be required to accommodate Complainant's request of continuing to work in her position unvaccinated. Respondent's determination was lawful and the complaint should be dismissed.


_____
_____ /s/ Michael Mohr

# Substantial Weight Review Procedure

Complaints co-filed under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act (ADEA), or the Americans with Disabilities Act (ADA) are enforced by the Equal Employment Opportunity Commission (EEOC).  The EEOC generally will adopt the findings of the Civil Rights Division; however, the Complainant has the option of requesting a review of this action.  Upon receipt of the attached letter, the Complainant has 15 days to make a written request for a review to:

Equal Employment Opportunity Commission

Federal Office Building

909 First Avenue #400

Seattle WA  98104-1061

Rev. 10-4-10

# EXHIBIT "F"

Kim Geis

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

**Count Days**    **Add Days**    **Workdays**    **Add Workdays**    **Weekday**    **Week №**

From **Thursday, August 17, 2023**
Added 90 days

## Result: Wednesday, November 15, 2023

### Calendar showing period from August 17, 2023 to November 15, 2023

| August 2023 | | | | | | | September 2023 | | | | | | | October 2023 | | | | | | | November 2023 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 14 days added | | | | | | | 30 days added | | | | | | | 31 days added | | | | | | | 15 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | 1 | 2 | 3 | 4 | 5 | | | | | | 1 | 2 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | | | | 1 | 2 | 3 | 4 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 27 | 28 | 29 | 30 | 31 | | | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 29 | 30 | 31 | | | | | 26 | 27 | 28 | 29 | 30 | | |

☐ = Start date (Aug 17, 2023)    ☐ = Final result date (Nov 15, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.

Sherry Swigart

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days    Add Days    Workdays    Add Workdays    Weekday    Week №

From **Wednesday, August 30, 2023**
Added 90 days

## Result: Tuesday, November 28, 2023

### Calendar showing period from August 30, 2023 to November 28, 2023

| August 2023 | | | | | | | | September 2023 | | | | | | | | October 2023 | | | | | | | | November 2023 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 day added | | | | | | | | 30 days added | | | | | | | | 31 days added | | | | | | | | 28 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat | | Sun | Mon | Tue | Wed | Thu | Fri | Sat | | Sun | Mon | Tue | Wed | Thu | Fri | Sat | | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | 1 | 2 | 3 | 4 | 5 | | | | | | | 1 | 2 | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | | | | | 1 | 2 | 3 | 4 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 | | 3 | 4 | 5 | 6 | 7 | 8 | 9 | | 8 | 9 | 10 | 11 | 12 | 13 | 14 | | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 | | 10 | 11 | 12 | 13 | 14 | 15 | 16 | | 15 | 16 | 17 | 18 | 19 | 20 | 21 | | 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 | | 17 | 18 | 19 | 20 | 21 | 22 | 23 | | 22 | 23 | 24 | 25 | 26 | 27 | 28 | | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 27 | 28 | 29 | 30 | 31 | | | | 24 | 25 | 26 | 27 | 28 | 29 | 30 | | 29 | 30 | 31 | | | | | | 26 | 27 | 28 | 29 | 30 | | |

☐ = Start date (Aug 30, 2023)    ☐ = Final result date (Nov 28, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.

Julie Johnson

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

**Count Days**    **Add Days**    **Workdays**    **Add Workdays**    **Weekday**    **Week №**

From **Friday, June 16, 2023**
Added 90 days

## Result: Thursday, September 14, 2023

### Calendar showing period from June 16, 2023 to September 14, 2023

| June 2023 | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| **14 days added** | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | **16** | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

| July 2023 | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| **31 days added** | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

| August 2023 | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| **31 days added** | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

| September 2023 | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| **14 days added** | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | **14** | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

☐ = Start date (Jun 16, 2023)    ☐ = Final result date (Sep 14, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.